JODI H. LINKER
Federal Public Defender
Northern District of California
DEJAN M. GANTAR
Assistant Federal Public Defender
8th Floor, Suite 820
55 South Market Street
San Jose, CA 95113
Telephone:    (408) 291-7753
Facsimile:    (408) 291-7399
Email: Dejan_Gantar@fd.org

Counsel for Defendant
RILEY

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>AMANDA RILEY,<br><br>Defendant. | Case No. CR 21–4 BLF<br><br>**DEFENDANT'S SENTENCING MEMORANDUM; OBJECTION TO PRESENTENCE REPORT**<br><br>**Court:**　　Courtroom 3, 5th Floor<br>**Hearing Date:**　May 3, 2022<br>**Hearing Time:**　9:00 a.m. |

## INTRODUCTION

Amanda Riley comes before the Court having plead guilty, pursuant to a plea agreement under Fed. R. Cr. P. 11(c)(1)(A)/(B), to one count of wire fraud, in violation of 18 U.S.C. § 1343. Probation calculates an advisory range of 12-18 months, and recommends a sentence of 18 months incarceration. Presentence Report ("PSR") ¶ 83, PSR Recommendation at 1. Ms. Riley does not object to Probation's Guidelines calculation, but respectfully disagrees with the sentencing recommendation. Ms. Riley recognizes the seriousness of her offense. She is extremely remorseful and is determined to do everything possible both to make restitution and to earn the forgiveness of the people she has hurt. She is a devoted wife and mother and, before her actions ended her career, she was a gifted teacher. While she does not have cancer, she does suffer from very real medical and mental health problems. Despite her offense, her family is steadfast in its commitment to help and support her when she is released from prison. Based on all of these factors and 18 U.S.C. § 3553(a), Ms. Riley respectfully requests the Court impose a sentence of six months incarceration, followed by three years of supervised release, with a condition to include six months of home detention ("the requested sentence.") The requested sentence is "sufficient, but not greater than necessary" to account for Ms. Riley's personal circumstances, and her actions. *Kimbrough v. United States*, 552 U.S. 85, 101 (2007).

## ARGUMENT

### I.   18 U.S.C. § 3553 AND THE SENTENCING GUIDELINES.

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Pepper v. United States*, 562 U.S. 476, 487-88 (2011). The Court is thus charged under 18 U.S.C. § 3553(a) to "impose a sentence sufficient, but not greater than necessary, to accomplish the goals of sentencing, including to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant." *Kimbrough*, 552 U.S. at 101 (quotation marks omitted; emphasis added).

As set forth in the PSR, Ms. Riley's advisory sentencing range is 12-18 months, and as such

falls within Zone C of the Sentencing Table. PSR ¶ 83. The Guidelines advise that, for sentencing ranges falling within Zone C, the "minimum term" may be satisfied by "a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention . . . provided that at least one-half of the minimum term is satisfied by imprisonment." *Id.; see also* USSG § 5C1.1(d). Consistent with her acceptance of responsibility and acknowledgement that a prison term will be imposed, Ms. Riley does not seek a downward variance. Instead, she requests a low-end Guidelines sentence: six months incarceration, followed by a term of supervised release that will include a six-month home detention condition. As set forth below, Ms. Riley respectfully submits that the section 3553(a) factors warrant imposition of the requested sentence.

## II. THE REQUESTED SENTENCE IS SUFFICIENT, BUT NOT GREATER THAN NECESSARY, TO ACCOMPLISH THE SENTENCING GOALS OF SECTION 3553.

### A. The history and characteristics of Amanda Riley warrant the requested sentence.

#### 1. Ms. Riley's upbringing.

18 U.S.C. § 3553(a)(1) directs the Court to consider "the history and characteristics of the defendant." Amanda Riley is a 36-year-old woman from Riverside, California. She grew up in a close-knit family, with three younger brothers. *See* Tom Maneri, Jr. Letter, attached hereto as Exhibit A. According to her brother Tom, Amanda's "entire childhood consisted of her watching after and helping her 3 younger brothers." *Id.* As a result of this offense, however, Ms. Riley has destroyed her relationships with many of those closest to her, including most of her extended family and one of her own brothers. PSR ¶ 51. Her closest friends from childhood have also cut ties with her. *Id.* Given the nature of this case, it's questionable whether those relationships can ever be mended.

On the surface, Ms. Riley's upbringing appears to have been relatively stable. Her parents fought often and sometimes imposed harsh punishments on the children, but her basic needs were met, and while she did not have many friends growing up, she was an excellent student who participated in extracurricular activities. *Id.* Her brother Tom recalls "times where we would play in our yard during hot summer days" and "family camping trips to Yosemite." *See* Ex. A, Tom Maneri, Jr. Letter.

As a teenager, however, Ms. Riley experienced a series of traumatic events, the impact of which went unacknowledged and unaddressed for many years. ██████████████████████

1 ███████████████████████████████████████████

2 ███████████████████████████████████████

3 ███████████████████████████████████████████

4 █████████████████████████████████████████

5 ███████████████████████████████████████████

Ms. Riley moved to the Bay Area to attend San Jose State University, and received her B.A. in 2007. PSR ¶ 71. She later earned a Master's Degree in Education Administration. *Id.*

### 2. Ms. Riley is the loving mother to two young children, and has the support of her family as she works to rehabilitate herself and make amends.

Ms. Riley and her husband Cory married in 2010. They have two young boys, ages 9 and 7, with whom she is very close, and loves very much. As described in the PSR, and the letters of support submitted on her behalf, attached here as Exhibit A, Ms. Riley is a caring and nurturing mother who is dearly devoted to her children.

Ms. Riley's parents and her brother Tom are understandably devastated, and struggling to reconcile her actions with the person they know her to be. As her mother writes, "We are trying to work thru the healing process, and piecing back our relationship moving forward. I will continue to support Amanda thru everything, as this mistake may define her currently, but there is so much good in her the world doesn't get to see thru this process." *See* Ex. A, Peggy Maneri Letter. Similarly, Ms. Riley's father writes fondly of his daughter; he describes Ms. Riley as thoughtful, kind, and deeply committed to her young family. *See id.,* Tom Maneri, Sr. Letter. He further explains that Ms. Riley has made it a priority to raise and shield her children in the midst of the chaos brought upon them by her actions, and this case. *Id.* Her brother describes Amanda as "a loving sister, a supportive mother," adding: "I may not be ready to forgive her yet, but I will always try my best to support her." *See id.,* Tom Maneri, Jr., Letter.

This Court is aware that many individuals who enter the criminal justice system are likely to struggle, and more likely recidivate, if they are without a strong social or family support network. However, as demonstrated by these letters, while Ms. Riley will have to take time to repair that network, it nonetheless exists. She has the support of her parents, and she is dedicated to successfully

raising her two young boys, who substantially rely on her. The defense respectfully submits that the support of her family and her emphatic commitment to her children will ensure that she never engages in similar conduct again.

### 3. Ms. Riley was a dedicated and gifted educator.

Although Ms. Riley has done irreparable damage to her career in education, it is important to note what a gifted and dedicated teacher she was. Indeed, that is what, amongst many other things, makes the instant case difficult to comprehend—despite the depth of the lies Ms. Riley told for years, she has nonetheless demonstrated that she's a kind and caring individual, who clearly has the capacity to contribute positively to her community. As described in the PSR, Ms. Riley has in recent years worked as an educator at various institutions. PSR ¶¶ 73-77. Ginny Whelchel, a former colleague of Ms. Riley's, writes that while she understands that Ms. Riley must be held accountable for her crime, "Amanda show[ed] genuine compassion during the time we worked together." Ex. A, Ginny Whelchel Letter. In particular, Ms. Whelchel describes how Ms. Riley "spent considerable time with troubled students and their families, as well as staff who were dealing with difficult situations." *Id.* Another colleague, Martha Helton, describes how dedicated Ms. Riley was to her position as an educator, and how she was at the forefront of transitioning the students at her school to online learning when the pandemic struck in 2020. *See id.,* Martha Helton Letter.

A common theme runs through these letters of support: while acknowledging Ms. Riley's long-lasting deceit, those who have remained by her side, agree that, despite the fraud at issue, she is kind, caring, deeply committed to her two young boys, and has nonetheless made positive contributions to her family and community over the years.



DEF. SENT. MEM.
*RILEY*, CR 21–4 BLF

1 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
2 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
3 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
4 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
5 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
6 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
7 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
8 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
9 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
10 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
11 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
12 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
13 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
14 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

**5. Ms. Riley's legitimate medical conditions warrant imposition of the requested sentence.**

As Probation bluntly puts it, "Ms. Riley is in poor health[.]" PSR ¶ 64. She suffers from a broad range of medical conditions. The conditions range in severity, but in combination, cause regular debilitating pain and difficult day-to-day functioning. Defense counsel acquired letters directly from Ms. Riley's physicians, which describe her ongoing conditions, submitted under seal as Exhibit B.

21 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
22 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
23 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
24 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
25 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
26 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
27 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
28 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓



Ms. Riley respectfully submits that by virtue of her medical conditions, an extensive BOP commitment would be significantly more punitive than it would be for a similarly situated offender who is in otherwise good health. As such, the requested sentence is supported both by the Guidelines, *see* USSG § 5H1.4 (noting that "in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment."), and section 3553(a)(2)(D) (directing the Court to consider the sentence imposed provide the defendant with needed medical care).

### 6. Ms. Riley's acceptance of responsibility and future plans.

Ms. Riley has accepted responsibility for her conduct in this case. Admittedly, it took some time to get there. But she has entered into a plea agreement with the Government, and admitted guilt. The seriousness of her actions are not lost on Ms. Riley—indeed, she does not seek a downward variance from the guidelines here, demonstrating her remorse and acknowledgement that her conduct can only warrant a prison term.

As she writes in her acceptance statement, she feels ashamed, embarrassed, and terrible for the people she's lied to and hurt. PSR ¶ 31. She furthermore submits that she is prepared to go to great lengths to make this right, and explains she "will spend the rest of [her] life trying to make amends for [her] choices." *Id.* She is prepared to face the consequences of her actions, and looks forward to moving on thereafter—she plans to "continue to be accountable for her actions, raise her children, and continue her medical and mental health treatments." *Id.* ¶ 59. She furthermore hopes to gain full-time

work, work on repairing broken relationships, and spend time with her children. *Id.*

      **B.**      **The nature and circumstances of the offense warrant the requested sentence.**

The defense acknowledges that the requested sentence requires consideration of the nature and circumstances of the offense, as directed by 18 U.S.C. § 3553(a)(1). The actions Ms. Riley took in this case are comprehensively documented in the PSR, and the defense anticipates the Government will thoroughly review them in its sentencing presentation. But, several points bear mention.

When Ms. Riley initially started the offense, the circumstances of her life were overwhelming: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Her misrepresentation regarding cancer began perhaps, as her brother surmised, as a call for attention, which then turned into her collection of donations, and later spiraled out of control. While nothing can excuse her actions, her remorse is real, as is her determination to do whatever she can to make things right. There is reason to believe that, with the help of therapy and the support of her family, Ms. Riley can be a productive and valuable member of society, and hopefully even find a way to continue teaching in some form.

In sum, the defense respectfully contends that the requested sentence of six months incarceration, followed by six months of home detention, is warranted in this case.

**III.**      **OBJECTION TO PRESENTENCE REPORT.**

The defense respectfully submits one objection to the PSR. The Government submitted to Probation numerous victim impact statements, which are included in the PSR. One of those statements was written by Nancy Moscatiello, a television producer associated with a "true crime" television series. PSR ¶ 26. For several years, Ms. Moscatiello has aggressively investigated Ms. Riley and her offense as a tabloid media story; she and her team were present during the 2016 search of Ms. Riley's home, have contacted her employers, and have attended court proceedings.

Ms. Riley recognizes that she has no power to prevent media coverage of her case. That being said, the defense respectfully submits that Ms. Moscatiello is not a "victim" under the Crime Victims' Rights Act ("CVRA"). The CVRA makes crime victims participants in the criminal process, and

enumerates them several rights that they may enforce through that process. *See United States v. Burkholder*, 590 F.3d 1071, 1074 (9th Cir. 2010). A "crime victim" under the CVRA "means a person directly and proximately harmed as a result of the commission" of the offense. 18 U.S.C. § 3771(e)(2)(A). "A person is directly harmed by the commission of a federal offense where that offense is a but-for cause of the harm." *In re Fisher*, 649 F.3d 401, 402-03 (5th Cir. 2011); *see also In re McNulty*, 597 F.3d 344, 350-51 (6th Cir. 2010) (noting that there must be a showing of both but-for and proximate causation).

Ms. Moscatiello does not appear to have suffered any harm or loss as a result of the underlying wire fraud conviction, nor does she otherwise satisfy the relevant standard. Indeed, if anything, Ms. Moscatiello is poised to profit from this case by producing a story about it. As such, the defense will object should she move the Court to speak at the sentencing hearing. Moreover, the defense respectfully requests the Court order Ms. Moscatiello's statement be stricken from the Victim Impact section of the PSR. *See generally Burkholder*, 590 F.3d 1071.

## CONCLUSION

For the foregoing reasons, Amanda Riley respectfully requests the Court impose the requested sentence.

Dated: April 26, 2022

Respectfully submitted,

JODI H. LINKER
Federal Public Defender
Northern District of California

*/s/ Dejan M. Gantar*
DEJAN M. GANTAR
Assistant Federal Public Defender