ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

MICHAEL G. PITMAN (DCBN 484164)
Assistant United States Attorney

   150 Almaden Boulevard, Suite 900
   San Jose, CA 95113
   Telephone:   (408) 535-5040
   Facsimile:   (408) 535-5081
   Email: michael.pitman@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>   v.<br><br>AMANDA CHRISTINE RILEY,<br><br>   Defendant. | Criminal No. 5:21-CR-00004-BLF<br><br>UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION FOR SENTENCE REDUCTION |

The United States of America ("United States") hereby respectfully opposes Defendant Amanda Christine Riley's ("Defendant's") Motion for Sentence Reduction Pursuant to 18 U.S.C. §§ 3582(C)(1)(A) & (2), filed on April 4, 2024 (Doc. 62) (the "Motion") as follows:

INTRODUCTION

While the Motion seeks to characterize Defendant as a having serious medical issues for which she is not receiving adequate care, the truth is the exact opposite: True to form, Defendant is barraging the Federal Bureau of Prisons ("BOP") with a torrent of dubious medical complaints; and the BOP is taking those complaints seriously, frequently referring Defendant to a local Level 1 Trauma Center for specialized care, despite the fact that she has no documented, serious medical condition. The Motion's request that Defendant's term of incarceration be vacated pursuant to Section 3582 should be denied

because there are no extraordinary and compelling reasons warranting any reduction in her sentence, and because the Section 3553(a) factors weigh against release. With respect to the Motion's request that Defendant's sentence be reduced pursuant to Amendment 821 to the U.S. Sentencing Guidelines, to the extent the Court is inclined to grant any relief at all, the government agrees with U.S. Probation's recommendation that Defendant's sentence be reduced by no more than four months.

BACKGROUND

Between 2012 and 2019, Defendant pretended to have Hodgkin's lymphoma, a type of cancer. Although she was not sick, Defendant carefully cultivated a social media presence, using Facebook, Instagram, Twitter, and a blog, all of which she used to "document" her nonexistent medical condition. Defendant went to great lengths to maintain her deception: She shaved her head to make it appear as if she were receiving chemotherapy; she falsified medical records, and forged physicians' letters and medical certifications; she convinced family-members to echo her false claims; she gave materially false testimony in several legal proceedings; and she attacked anyone who suggested she was malingering (going so far as to sue one of them). Defendant maintained this ruse in order to take advantage of generous, trusting people, which she did for many years. Specifically, Defendant used her social media presence to aggressively solicit donations, ostensibly to cover her medical expenses. In truth, of course, Defendant had no medical expenses. The donations she received were deposited into her personal bank accounts, and used to pay her living expenses. The government identified more than three hundred victims who made contributions with a total value of more than $100,000 towards Defendant's fabricated medical expenses. As illustrated by the written Victim Impact Statements received in connection with Defendant's sentencing, and the heart-wrenching statements made by multiple victims during her sentencing hearing, Defendant cruelly exploited the faith and good will of her victims in order to fund her extravagant lifestyle and maintain her position as a semi-celebrity.

Defendant pleaded guilty to one count of wire fraud in violation of 18 U.S.C. § 1343, and was sentenced in May 2022. Defendant's original Total Offense Level was 13 and her Criminal History Category was I, resulting in a guideline imprisonment range of 12 to 18 months. *See* Revised Presentence Investigation Report ("PSR"), Doc. 44, at ¶¶ 32 – 48 & 82. The PSR and the United States both recommended an 18-month sentence, *see* PSR at Sentencing Recommendation & Doc. 37, and the

Court varied upwards to impose a sentence of 60 months in prison, along with a three-year term of supervised release and $105,513 in restitution. *See* Doc. 51. Defendant was ordered to report to the BOP on August 2, 2022, but that date was extended at Defendant's request to September 3, 2022. *See* Doc. 57. Defendant has now served roughly 20 months of her prison sentence, and her current projected release date is March 9, 2026. *See* https://www.bop.gov/inmateloc// (accessed May 6, 2024).

ARGUMENT

### I.   The Court Should Not Reduce Defendant's Sentence Under 18 U.S.C. § 3582

Under 18 U.S.C. § 3582(c), courts generally may not modify a term of imprisonment once it has been imposed, subject to several exceptions. One such exception "provides courts the discretion to grant a prisoner compassionate release when certain conditions are met." *United States v. Keller*, 2 F.4th 1278, 1281 (9th Cir. 2021)). This compassionate release exception, codified at 18 U.S.C. § 3582(c)(1)(A), allows prisoners to seek relief from the court after exhausting administrative rights. Here, the United States does not dispute that Defendant has exhausted her administrative remedies.

When addressing the merits of a motion for compassionate release, the court must consider three factors identified in Section 3582(c)(1)(A): First, whether extraordinary and compelling reasons warrant a reduction; second whether a reduction would be consistent with applicable policy statements issued by the Sentencing Commission; and third, whether a reduction is warranted under the factors set forth in 18 U.S.C. § 3553(a). *See United States v. Wright*, 46 F.4th 938, 945 (9th Cir. 2022). "Although a district court must conclude that a defendant satisfies all three predicates before granting a motion for compassionate release, it may deny compassionate release if a defendant fails to satisfy any of these grounds." *Id*. Thus, it is the defendant the bears the burden of establishing eligibility for compassionate release. *See United States v. Wentworth*, 19-cr-00388-CRB, 2024 WL 1470534, at * 2 (N.D. Cal. April 3, 2024) (quoting *Wright*, 46 F.4th at 951).

Section 3582 does not define "extraordinary and compelling reasons," but the Sentencing Commission has provided policy statements describing the term. A recent amendment to the U.S. Sentencing Guidelines provides such a policy statement at U.S.S.G. § 1B1.13. Some courts treat this updated policy statement as binding, while others treat it as advisory. *See United States v. Ramirez-Suarez*, 16-cr-00124-BLF, 2024 WL 1485859, at * 4 (N.D. Cal. April 5, 2024) (citing cases and

concluding "[t]his Court agrees with the decisions finding that, as amended effective November 1, 2023, U.S.S.G. § 1B1.13 is an applicable policy statement for § 3582(c)(1)(A) motions filed by defendants and therefore is binding on district courts addressing such motions."). Whether binding or not, Section 1B1.13(b) states that extraordinary and compelling reasons for a reduction in sentence may exist under several enumerated circumstances, or a combination thereof, including the defendant's medical circumstances (U.S.S.G. § 1B1.13(b)(1)), and "Other Reasons" (U.S.S.G. § 1B1.13(b)(5)). Here, the Motion's appeal to Section 3582 should be denied in its entirety because the Motion fails to satisfy any of the predicates for relief.

### A. The Motion Does Not Identify Any Extraordinary Or Compelling Reasons

First, with respect to whether extraordinary and compelling reasons for a reduction in sentence exist, the Motion relies upon Section 1B1.13(b)(1)(C) which provides that extraordinary and compelling reasons exist where "[t]he defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." The Motion is necessarily vague about which medical condition or conditions it relies upon. Indeed, Section I.B. of the Motion does not even attempt to argue that Defendant suffers from a specific, chronic illness, although other portions of the Motion refer to Defendant's hypokalemia (low potassium), tachycardia (a heart rate over 100 beats per minute), and other poorly defined, and even more poorly documented, cardiac, pulmonary, and mental health issues. These medical conditions – even if they existed – would be neither extraordinary nor compelling. *See, e.g., United States v. Brugnara*, 14-cr-00306-WHA, 2024 WL 332867, at * 3-4 (N.D. Cal. Jan. 28, 2024) (denying relief under Section 1B1.13(b)(1)(C) to prisoner with medical conditions including hypertension, chest pains, and stenosis); *United States v. Tashbook*, 01-cr-20160-CRB, 2023 WL 4769934, at * 4-5 (N.D. Ca. July 25, 2023) (denying relief under Section 1B1.13(b)(1)(C) to prisoner with medical conditions including testicular cancer, hypertension, and mental health issues); *United States v. Juarez*, 17-cr-00554-PJH, 2022 WL 4544698, at * 2-3 (N.D. Cal. Sept. 28, 2022) (denying relief under Section 1B1.13(b)(1)(C) to prisoner who experienced a gastrointestinal blockage which required that he be transported by helicopter for emergency surgery, and subsequent gastrointestinal issues); *see also United States v. Gomez-Moreira*, 20-cr-00151-JLT, 2024 WL 245640, at * 3 (E.D. Cal.

Jan. 23, 2024) (citing cases supporting the proposition that chronic conditions which are treatable by the BOP do not establish extraordinary and compelling reasons that merit compassionate release).

Perhaps not surprisingly, however, Defendant's medical records make clear that she does not actually suffer from any acute health problems at all.  In fact, Defendant's medical records are replete with explicit findings, for example, that:

- Defendant intentionally stressed her body to create tachycardia (a heart rate over 100 beats per minute), *see* Exhibit 2, Emergency Services Attending Note dated April 17, 2023, filed herewith under seal with highlighting added for the Court's convenience, at page 2 [US-2024-003070];

- Defendant was observed holding her breath during an oxygen saturation test to effect the test results, *see* Exhibit 3, Clinical Encounter - Administrative Note dated April 17, 2023, filed herewith under seal with highlighting added for the Court's convenience, at page 1 [US-2024-002051];

- Defendant attempted to manipulate an infusion pump administering potassium to her, *see* Exhibit 4, Emergency Services Attending Note dated April 22, 2023, filed herewith under seal with highlighting added for the Court's convenience, at page 1 [US-2024-002994];

- Defendant exhibited symptoms of Munchausen syndrome, *see* Exhibit 5, Emergency Department Provider Notes dated June 27, 2023, filed herewith under seal with highlighting added for the Court's convenience, at page 11 [US-2024-0001179]; and

- Defendant repeatedly requested or demanded pain medication, including explicit requests for powerful narcotics, when complaining of chest pains, *see* Exhibit 6, Progress Note dated April 17, 2023, filed herewith under seal with highlighting added for the Court's convenience, at page 1 [US-2024-003090]; Exhibit 7, History and Physical Examination dated June 2, 2023, filed herewith under seal with highlighting added for the Court's convenience, at page 1 [US-2024-002908]; Exhibit 8, Significant Event Note dated June 27, 2023, filed herewith under seal with highlighting added for the Court's convenience, at page 1 [US-2024-0001199]; and Exhibit 9, History and Physical Examination dated June 27, 2023, filed herewith under seal with highlighting added for the Court's convenience, at page 1 [US-2024-002849].

Her caregivers are so skeptical of Defendant's self-reported and questionable claims about her own physical condition that at least three different physicians and one registered nurse included notes in their reports of encounters with Defendant flagging a concern for "factitious disorder." *See* Exhibit 10, History and Physical Examination dated April 17, 2023, filed herewith under seal with highlighting added for the Court's convenience, at page 2 [US-2024-003073]; Exhibit 11, Clinical Encounter - Administrative Note dated April 18, 2023, filed herewith under seal with highlighting added for the Court's convenience, at page 2 [US-2024-002047]; Exhibit 12, Discharge Summary dated April 18, 2023, filed herewith under seal with highlighting added for the Court's convenience, at page 2 [US-2024-3053]; and Exhibit 13, History and Physical Examination dated October 31, 2023, filed herewith under seal with highlighting added for the Court's convenience, at page 1 [US-2024-000921].  A fourth doctor went so far as to list "factitious disorder/malingering" among Defendant's diagnoses.  *See* Exhibit 14, Emergency Department Provider Notes dated April 17, 2023, filed herewith under seal with highlighting added for the Court's convenience, at page 4 [US-2024-003062]; and Exhibit 15, Emergency Department Provider Notes dated April 22, 2023, filed herewith under seal with highlighting added for the Court's convenience, at page 4 [US-2024-0001318].  These facts, when considered in light of the conduct underlying Defendant's conviction in this case, support the conclusion that Defendant is manufacturing or exaggerating her symptoms in order to secure special treatment and access to drugs.

With respect to any genuine health issues Defendant is experiencing, the Motion itself concedes that the BOP regularly transports Defendant to a hospital (John Peter Smith Hospital, a Level 1 Trauma Center located in Fort Worth, Texas, 11 miles from the prison) to receive medical treatment, the quality of which the Motion does not dispute.  In fact, during the course of her incarceration, Defendant has seen multiple specialists for multiple complaints including cardiology, cardiothoracic surgery, gastroenterology, general surgery, hematology oncology, interventional radiology, neurology, neurosurgery, orthopedic surgery, pain medicine, pulmonology, and sleep medicine – none of which has identified any serious problems – and Defendant has also had multiple negative computerized tomography angiograms at the hospital.  *See* Exhibit 10 at page 2 [US-2024-003073]; *see also* Exhibit 14 at page 5 [US-2024-003063]; Exhibit 15 at page 4 [US-2024-001318].  Any argument that Defendant is not receiving specialized medical care while in custody would be specious.

Finally, the Motion makes no serious argument that Defendant is at any risk of serious deterioration in health or death. Quite the contrary, in an effort to secure a more desirable housing within the prison, Defendant herself confirmed in October 2023 that that she was self-sufficient and was not in need of infusions or surgery. *See* Exhibit 16, Documentation of Informal Resolution Attempt dated October 26, 2023, filed herewith under seal, at page 1 [US-2024-001615].

Thus, it simply is not true that Defendant has any genuine medical condition that requires long-term or specialized medical care that is not being provided resulting in a risk of serious deterioration in health or death. None of the criteria included in Section 1B1.13(b)(1)(C) are satisfied here, and the Motion does not set forth facts which would support relief under Section 1B1.13(b)(5) either.

### B. A Reduction Would Not Be Consistent With Applicable Policy Statements

The most pertinent policy statement is U.S.S.G. § 1B1.13 which, as discussed above, clearly weighs against reducing Defendant's sentence because she has not established any basis for relief.

### C. The Section 3553(a) Factors Weigh Against A Reduction

Even if there were extraordinary and compelling circumstances justifying a reduction in Defendant's sentence, the Court should still deny the Motion based on the Section 3553(a) factors. The Court addressed the Section 3553(a) factors thoroughly during Defendant's sentencing, considering particularly the nature, circumstances, and seriousness of the offense, the need for deterrence, the goal of protecting the public, and Defendant's history and characteristics – especially her health: Defendant sought to present herself as medically compromised during her sentencing, and her medical conditions were discussed at great length in her PSR (which nevertheless recommended a prison sentence at the high end of Defendant's guidelines), *see* PSR at ¶¶ 62 – 67, and the Court explicitly took those concerns into account when imposing Defendant's initial sentence. *See* Exhibit 1, Transcript of Defendant's May 3, 2022, Sentencing, at 35:3 – 35:5.

The Motion argues that it is unfair that the BOP will not transfer Defendant from the Federal Medical Facility ("FMC") at Carswell to the facility's prison camp. This argument is circular: The Motion argues in one Section that Defendant is not receiving adequate medical care at FMC Carswell, *see* Motion at 7-9, while arguing in the following Section that she must be transferred to a prison camp with fewer medical resources. *See* Motion at 11. It is also worth noting that the defense specifically

requested that the Court recommend that the BOP house Defendant at FMC Carswell during sentencing. *See* Exhibit 1 at 28:12 – 28:22.  In any event, given that the Motion offers no evidence whatsoever to support its argument that conditions at FMC Carswell are restrictive or harsh, the BOP's placement decision should have no bearing on the Section 3553(a) analysis.

If anything, the Section 3553(a) factors weigh more heavily towards incarceration now than they did at Defendant's sentencing.  Defendant's conduct in custody makes clear that she is determined to continue malingering.  She also has made no real effort to pay her restitution to her victims.  *See* U.S. Probation's Sentence Reduction Investigation Report ("SRIP"), Doc. 66, at Post Sentencing Conduct.  Defendant does not appear to have learned anything from her conviction, she has not been deterred at all by her sentence, and she continues to pose a danger to the community.  *See* SRIP at Recommendation.  Releasing Defendant now would not promote respect for the law, provide just punishment for the offense, deter criminal conduct, or protect the public.  Quite the opposite.  Thus, the Motion's appeal to Section 3582 should be denied in its entirety because the Motion fails to satisfy any of the predicates for relief.

### *II.     The Court May Reduce Defendant's Sentence Under Amendment 821*

In the alternative, the Motion argues that the Court should reduce Defendant's sentence to 47 months (a 13-month reduction) pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 821 to the U.S. Sentencing Guidelines.  Section 3582(c)(2) creates a second exception to the general rule that courts may not modify a term of imprisonment.  Specifically, where a defendant has been "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission, . . . . the court may reduce the term of imprisonment after considering the [applicable] factors set forth in section 3553(a) . . . if such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission."  *See* 18 U.S.C. § 3582(c)(2).  Courts have adopted a two-step approach for determining whether a reduction is appropriate under Section 3582(c)(2): First, the court must determine the defendant's eligibility for a sentence modification, and the extent of the reduction authorized under U.S.S.G. § 1B1.10; and second, the court must consider the appliable Section 3553(a) factors.  *See Dillon v. United States*, 560 U.S. 817, 827 (2010); *see also United States v. Espinoza-Patino*, 12-cr-00833-BLF, 2024 WL 1772862, at * 1-2 (N.D. Cal. April 22, 2024).

1  The Motion relies upon Amendment 821 to the U.S. Sentencing Guidelines, under which the Sentencing Commission added a section providing for a 2-offense-level reduction for offenders who satisfy the criteria set forth in Sections 4C1.1(a)(1) through (a)(10), including presenting zero criminal history points.  This change applies retroactively.  *See* U.S.S.G. § 1B1.10(e)(2).  The United States agrees with U.S. Probation's conclusions that Defendant is eligible for a retroactive reduction in her sentence because all the criteria set forth at Sections 4C1.1(a)(1) through (a)(10) are satisfied.  *See* SRIP at Recommendation.  Upon application of this provision to Defendant, her Total Offense Level is reduced to 11, resulting in a guideline imprisonment range of 8 to 14 months.  *See id*. at Page 2.

While Defendant is eligible for a reduction, the Court retains great discretion in deciding whether to actually grant relief, and courts regularly decline to grant sentence reductions to eligible defendants. *See, e.g., United States v. Dunn,* 728 F.3d 1151, 1159-60 (9th Cir. 2013) ("[T]he district court presented a balanced account of both positive and negative [Section 3553(a)] factors, and provided sufficient explanation for why it denied Dunn a reduced sentence."); *United States v. Wilson*, 716 F.3d 50, 53 (2d Cir. 2013) (denial of sentence reduction was not an abuse of discretion, though earlier sentence reduction had been granted despite defendant's prison misconduct, and defendant had not engaged in any new prison misconduct); *United States v. Styer*, 573 F.3d 151, 154-55 (3d Cir. 2009) (denial based on nature of original criminal conduct); *United States v. Stevenson*, 332 F. App'x 261 (6th Cir. 2009) (unpublished) (reduction denied despite eligibility under amendment, based on disciplinary infractions in prison, and lengthy criminal record); *United States v. Arceneaux*, 297 F. App'x 819 (10th Cir. 2008) (unpublished) (reduction denied due to disciplinary record in prison); *United States v. Marion*, 293 F. App'x 731 (11th Cir. 2008) (unpublished) (district court denied reduction motion based on same factor it considered at sentencing).

Here, relief is not appropriate.  As discussed above, the Section 3553(a) factors militate against a reduction in Defendant's sentence.  Nor should the fact that Defendant had no criminal history obscure the fact that the criminal conduct underlying her conviction lasted several years.  Defendant's crime was not an isolated or anomalous event, but rather a long term, multi-faceted scheme with hundreds of victims. In addition, it could be argued that Defendant already benefited from the fact that she had no criminal history since she was sentenced in Criminal History Category I.  That having been said, to the

extent the Court determines that the addition of Section 4A1.1(c) to the U.S. Sentencing Guidelines suggests an additional credit is warranted, the result recommended by U.S. Probation balances the relevant considerations appropriately: If Defendant is to receive relief, a four-month reduction would reflect 100% of the credit applicable to Defendant's guidelines through a retroactive application of Section 4A1.1(c) while maintaining a variance commensurate with the initial sentence, which remains completely appropriate. *See* SRIP at Recommendation (factors motivating the upwards variance in Defendant's sentence "are still present in this case . . . [and] the upward variance is still appropriate.").

## CONCLUSION

"I do find the public to be at significant risk from you.  I do believe that this will happen again. [B]eing confronted with your lies seemed to be no deterrent whatsoever, and therefore I find the public to continue to be at risk from your continued fraud." *See* Exhibit 1 at 34:14 – 34:18.  The Court's observations during Defendant's sentencing were prescient, but perhaps not sufficiently cynical: Having served just 20 months of the 60-month sentence imposed after she pretended to have cancer in order to garner sympathy and to steal money from her victims, Defendant already has a well-documented history of pretending to be ill while in custody, going so far as to interfere with medical tests and intentionally increase her heart rate in an effort to substantiate her unverified and amorphous health complains.  The Motion's perverse effort to leverage this behavior to secure Defendant's premature release is truly audacious given the conduct underlying her conviction.  If anything, Defendant's behavior while in custody reveals that, as the Court predicted at her sentencing, Defendant has learned nothing from her conviction, and continues to pose a danger to those around her.  Accordingly, the United States respectfully opposes the Motion.

Respectfully submitted: May 6, 2024

ISMAIL J. RAMSEY
United States Attorney

s/ Michael G. Pitman
MICHAEL G. PITMAN
Assistant United States Attorney