**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.  21-cr-00004-BLF-1 |
| Plaintiff, | |
| v. | **ORDER DENYING MOTION TO REDUCE SENTENCE** |
| RILEY, | [Re:  ECF No. 62] |
| Defendant. | |

Defendant Amanda Riley is serving a five-year prison sentence for faking cancer to collect donations for fabricated medical expenses.  Defendant, now claiming new medical maladies, seeks a reduction in sentence to "time served" pursuant to 18 U.S.C. § 3582(c)(1), and, alternatively, a reduction in sentence to 47 months under section (c)(2).  ECF No. 62 ("Mot."); ECF No. 70 ("Reply").  The Government opposes, pointing to evidence that Defendant is once again feigning illness.  ECF No. 67 ("Opp.").  For the reasons described below, the Court DENIES Defendant's motion.

## I.   BACKGROUND

Between 2012 and 2019, Defendant pretended to have Hodgkin's lymphoma, a type of cancer.  ECF No. 31 ("Plea Agreement") at 2.  Although she was not sick, Defendant carefully cultivated a social media presence, using Facebook, Instagram, Twitter, and a blog, all of which she used to "document" her nonexistent medical condition.  *Id.*  Defendant went to great lengths to maintain her deception: she shaved her head to make it appear as if she were receiving chemotherapy, falsified medical records, and forged physicians' letters and medical certifications. *Id.*  Specifically, Defendant used her social media presence to aggressively solicit donations, ostensibly to cover her medical expenses.  *Id.* at 3.  In truth, of course, Defendant had no medical

United States District Court
Northern District of California

expenses.  *Id.* at 3.  The donations she received were deposited into her personal bank accounts, and used to pay her living expenses.  *Id.*  The government identified more than 300 victims who made contributions with a total value of more than $100,000 towards Defendant's fabricated medical expenses.  *Id.*  As illustrated by the written Victim Impact Statements received in connection with Defendant's sentencing, and the heart-wrenching statements made by multiple victims during her sentencing hearing, Defendant cruelly exploited the faith and good will of her victims in order to fund her extravagant lifestyle and maintain her position as a semi-celebrity. *Id.*; *see generally* ECF No. 50 ("Sentencing Tr.").

Defendant pleaded guilty to one count of wire fraud in violation of 18 U.S.C. § 1343, and was sentenced in May 2022.  Defendant's original Total Offense Level was 13 and her Criminal History Category was I, resulting in a guideline imprisonment range of 12 to 18 months.  *See* Revised Presentence Investigation Report, ECF No. 44 ("PSR") ¶¶ 32–48 & 82.  The PSR and the Government both recommended an 18-month sentence, *see* PSR at Sentencing Recommendation & ECF No. 37, and the Court varied upwards to impose a sentence of 60 months in prison, along with a three-year term of supervised release and $105,513 in restitution.  ECF No. 51 (Judgment) at 6.  Defendant was ordered to report to the Bureau of Prisons ("BOP") on August 2, 2022, but that date was extended at Defendant's request to September 3, 2022.  ECF No. 57.  Defendant has now served roughly 20 months of her prison sentence, and her current projected release date is March 9, 2026.

As of January 22, 2024, Defendant's BOP medical records establish a broad range of claimed medical issues, including but not limited to polyneuropathy; pulmonary embolism ("PE"); cardiac arrhythmia; asthma; sleep terrors; hypotension; fusion of spine; interstitial pulmonary disease; abnormal uterine and vaginal bleeding; and tachycardia.  See Ex. H, 8/2/2023 BOP Consultation Request, at US-2024-748.  Defendant is most often taken to the Emergency Room for tachycardia (increased heart rate).  Ex. I (7/28/2023 Report of Consultation) at US-2023-1254. Defendant has been treated for chronic hypokalemia (potassium deficiency) and hypomagnesemia (magnesium deficiency).  Ex. N at US-2024-733.  Defendant has also been treated for various mood and mental health disorders such as "Unspecified Mood [Affective] Disorder," anxiety, and

post-traumatic stress disorder.  Ex. R at US-2023-985.

Defendant's medical providers regularly note a substantial gap between her claimed symptoms and what they can medically observe.  *See, e.g.*, Ex. 3 at US-2024-2052 ████████

████████████████████████████████████████████████████████████████

██████████████████████████████████); Ex. 10 (4/17/23 physician's note) (same); Ex. 11–12 (similar); Ex. 5 at 1172 ████████████████████████████████████████████████;

Ex. 15 (4/22/23 physician's note) ███████████████████████████████████████████████

███████████████████████████████████████████████████████████████.

A physician's note on October 31, 2023 suggests factitious disorder and malingering:

████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████

Ex. 13 at US-2024-921 (emphasis added).  Defendant's behavior and symptoms have led her doctors to believe with increasing confidence that she may suffer from Munchausen syndrome:

████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
██████████████████████████████████████

Ex. 14 at US-2024-3063 (4/17/2023 physician's note) (emphasis added); Ex. 2 ████████

████████████████████████████████████████████████████████████████

(emphasis added); Ex. 5 (7/7/23 Physician's note) ██████████████████████████████

██████████████.

United States District Court
Northern District of California

United States District Court
Northern District of California

Defendant's medical records contain evidence of Defendant taking intentional steps to interfere with her testing and treatment:

- Defendant intentionally stressed her body to create tachycardia (a heart rate over 100 beats per minute), Ex. 2 (attending note dated April 17, 2023) at US-2024-3070 ███████████████████████████████████████ (emphasis added). ██████████████████████████████

- Defendant was observed holding her breath during an oxygen saturation test to affect the test results.  Ex. 3 ████████████████████████████ ███████████.

- Defendant attempted to manipulate an infusion pump administering potassium to her.  Ex. 3:



(4/17/23 Nurse's note); Ex. 4 (4/22/23 Physician's note) ███████████████ ██████████████████████████████████████████████ ████████████.

Defendant repeatedly requested or demanded pain medication, including explicit requests for powerful narcotics, when complaining of chest pains.  Ex. 6 (4/17/23 physician's note) ██████████████████████████; Ex. 7 (6/2/23 physician's note) ████████ ████████████████████████████████████; Ex. 8 (6/27/23 nurse's note) ██████████████████████████; Ex. 9 (6/27/23 physician's note) ██████████████ ██████████████.

In her first 18 months of custody, Defendant has been taken by ambulance to an off-site hospital 11 miles away from Carswell twenty-four times.  *See* Declaration of Caitlin Frediani ("Frediani Decl.") at ¶ 5.  Defendant has been housed in the general population of the prison and has requested transfer to the satellite camp where inmates with her low security designation are

1    housed, but has been denied, due to a "medical hold."  Exs. C–E.

2    ## II.    LEGAL STANDARD

3         Ordinarily, a federal court "may not modify a term of imprisonment once it has been

4    imposed[.]"  18 U.S.C. § 3582(c); *see also United States v. Keller*, 2 F.4th 1278, 1281 (9th Cir.

5    2021).  "But this general rule is subject to several exceptions, one of which provides courts the

6    discretion to grant a prisoner compassionate release when certain conditions are met."  *Id.* at 1281.

7    When Congress created this exception, codified at 18 U.S.C. § 3582(c)(1)(A), only the Director of

8    the Bureau of Prisons ("BOP") could file a motion for compassionate release.  *See id.*  However,

9    the statute has been broadened to allow a defendant to seek a sentence reduction directly from the

10   court "after the defendant has fully exhausted all administrative rights to appeal a failure of the

11   Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the

12   receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]"  18

13   U.S.C. § 3582(c)(1)(A).

14        Section 3582(c)(2) creates a second exception to the general rule that courts may not

15   modify a term of imprisonment.  Specifically, where a defendant has been "sentenced to a term of

16   imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing

17   Commission, . . . . the court may reduce the term of imprisonment after considering the

18   [applicable] factors set forth in section 3553(a) . . . if such a reduction is consistent with the

19   applicable policy statements issued by the Sentencing Commission."  *See* 18 U.S.C. § 3582(c)(2).

20   If a defendant was "sentenced to a term of imprisonment based on a sentencing range that has

21   subsequently been lowered by the Sentencing Commission, . . . the court may reduce the term of

22   imprisonment after considering the factors set forth in section 3553(a) to the extent that they are

23   applicable, if such a reduction is consistent with the applicable policy statements issued by the

24   Sentencing Commission." 18 U.S.C. § 3582(c)(2).

25   ## III.    DISCUSSION

26        ### A.    Compassionate Release Under Section 3582(c)(1)

27        After a "defendant has fully exhausted all administrative rights to appeal," the defendant

28   can seek compassionate release from the Courts.  18 U.S.C. § 3582(c)(1)(A).  When addressing

United States District Court
Northern District of California

5

the merits of a motion for compassionate release, a district court must consider three factors identified in 18 U.S.C. § 3582(c)(1)(A). *See United States v. Wright*, 46 F.4th 938, 945 (9th Cir. 2022). "First, the district court must determine whether extraordinary and compelling reasons warrant a sentence reduction." *Id.* (quotation marks and citation omitted). "Second, the court must evaluate whether a reduction would be consistent with applicable policy statements issued by the Sentencing Commission." *Id.* (quotation marks and citation omitted). "Third, the court must consider and weigh the factors set forth in 18 U.S.C. § 3553(a) to decide whether the requested sentence reduction is warranted under the particular circumstances of the case." *Id.* (quotation marks and citation omitted). "Although a district court must conclude that a defendant satisfies all three predicates before granting a motion for compassionate release, it may deny compassionate release if a defendant fails to satisfy any of these grounds." *Id.* The Court addresses exhaustion, then the three factors.

### 1. Exhaustion

As a threshold matter, the Court must determine whether Defendant has satisfied the administrative exhaustion requirement of § 3582(c)(1)(A). Defendant argues that on October 20, 2023, she sent a request to the Warden, through counsel, for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A). The Government does not dispute exhaustion. Thus, the Court finds that Defendant has met the administrative exhaustion requirement.

### 2. Extraordinary and Compelling Reasons Consistent With Applicable Policy Statement

The Court assesses the first two § 3582(c)(1)(A) factors together. "First, the district court must determine whether extraordinary and compelling reasons warrant a sentence reduction." *Wright*, 46 F.4th at 945 (quotation marks and citation omitted). "Second, the court must evaluate whether a reduction would be consistent with applicable policy statements issued by the Sentencing Commission." *Wright*, 46 F.4th at 945 (quotation marks and citation omitted).

Defendant argues that "[e]xtraordinary and compelling reasons, consistent with the applicable policy statement, warrant a reduction to time served." Mot. at 7. Defendant argues that "Carswell is not equipped to provide Ms. Riley with the medical care required for her complex

6

United States District Court
Northern District of California

1   medical conditions." *Id.*  Defendant notes that she has been transported to the local hospital 24

2   times, and argues that the frequency of hospital visits alone indicates inadequate treatment.  *Id.* at

3   7–8.  Defendant also questions why she hasn't been treated onsite at Carson and why she, despite

4   being categorized as "Care Level 3" is not housed in Carsons "chronic care unit."  *Id.* at 8.

5   Defendant also argues that she has received inadequate mental health treatment.

6         The Government responds that Defendant's "Motion is necessarily vague about which

7   medical condition or conditions it relies upon."  Opp. at 4.  The Government also argues that

8   Defendant's other documented illnesses such as hypokalemia and tachycardia are not

9   extraordinary or compelling, and notes that Defendant does not challenge the quality of her

10  medical treatment.  *Id.* at 4, 6.  The Government also questions Defendant's veracity, and cites

11  extensive examples of Defendant feigning sickness or intentionally interfering with treatment.  *Id.*

12  at 5–6.  Finally, the Government argues that Defendant's interest in securing more desirable

13  housing within the prison is evidence that she is not "at any risk of serious deterioration in health

14  or death"  *Id.* at 7.

15        In reply, Defendant points to a physician's note stating that Defendant was ████████

16  ████████████████████████████████████████████████  Ex. 7 at US-2024-2909.

17  Defendant also argues that if her "symptoms are the result of factitious disorder" then she is

18  "suffering from 'a serious mental health disorder'" for which she is not receiving adequate mental

19  health treatment.  Reply at 4 (quoting Mayo Clinic, *Factitious Disorder*, available at

20  https://www.mayoclinic.org/diseases-conditions/factitious-disorder/symptoms-causes/syc-

21  20356028).

22        The relevant policy statement regarding extraordinary and compelling circumstances,

23  USSG § 1B1.13, was amended on November 1, 2023.  As amended, the policy statement provides

24  that "extraordinary and compelling reasons" include "medical circumstances of the defendant

25  where the defendant suffers from severe or chronic illness."  *United States v. Garcia Nava*, —F.

26  Supp. 4th—, 2024 WL 221439, *2 (S.D. Cal. Jan. 19, 2024).  In particular, a reduction may be

27  justified when a defendant "is suffering from a medical condition that requires long-term or

28  specialized medical care that is not being provided and without which the defendant is at risk of

United States District Court
Northern District of California

1    serious deterioration in health or death." USSG § 1B1.13(b)(1)(C).  In addition to the enumerated

2    examples, "the Court retains substantial discretion to determine what constitutes extraordinary and

3    compelling reasons pursuant to USSG § 1B1.13(b)(5)," a catch-all provision allowing for a

4    reduction if the defendant "presents any other circumstances or combination of circumstances that,

5    when considered by themselves or together are similar in gravity to the reasons explicitly

6    enumerated." *Garcia Nava*, 2024 WL 221439 at *2 (cleaned up).

7         As an initial matter, Defendant's history of feigning illness for personal gain combined

8    with a chorus of skepticism from the medical professionals treating her raises serious questions

9    about her credibility.  Regardless of credibility, Defendant's claimed medical conditions are not

10   extraordinary or compelling such that they warrant release.

11        Defendant argues that she suffers from tachycardia (an increased heart rate), hypokalemia

12   (low potassium levels), hypomagnesemia (low magnesium levels), hypophosphatemia (low

13   phosphate levels), mood affective disorder, anxiety, and post-traumatic stress disorder.  In reply,

14   Defendant argues that if she instead suffers from factitious disorder, then that is also serious

15   enough to require release.  Reply at 1, 4.  The existence of these medical conditions is neither

16   extraordinary nor compelling such that her sentence should be reduced.  *See, e.g., United States v.*

17   *Brugnara*, 14-cr-00306-WHA, 2024 WL 332867, at * 3-4 (N.D. Cal. Jan. 28, 2024) (denying

18   relief under Section 1B1.13(b)(1)(C) to prisoner with medical conditions including hypertension,

19   chest pains, and stenosis); *United States v. Tashbook*, 01-cr-20160-CRB, 2023 WL 4769934, at *

20   4-5 (N.D. Ca. July 25, 2023) (denying relief under Section 1B1.13(b)(1)(C) to prisoner with

21   medical conditions including testicular cancer, hypertension, and mental health issues); *United*

22   *States v. Juarez*, 17-cr-00554-PJH, 2022 WL 4544698, at * 2-3 (N.D. Cal. Sept. 28, 2022)

23   (denying relief under Section 1B1.13(b)(1)(C) to prisoner who experienced a gastrointestinal

24   blockage which required that he be transported by helicopter for emergency surgery, and

25   subsequent gastrointestinal issues); *see also United States v. Gomez-Moreira*, 20-cr-00151-JLT,

26   2024 WL 245640, at * 3 (E.D. Cal. Jan. 23, 2024) (citing cases supporting the proposition that

27   chronic conditions which are treatable by the BOP do not establish extraordinary and compelling

28   reasons that merit compassionate release).  Critically, Defendant makes no showing that Carswell

8

is unable to provide the appropriate medical treatment for these conditions.  When Defendant displays symptoms requiring hospitalization, BOP regularly transports Defendant to a hospital 11 miles from the prison to receive medical treatment, and Defendant does not dispute the quality of the medical care.

Furthermore, Defendant's own words are evidence that she is receiving adequate treatment.  Defendant wrote in a request to go to FMC Camp that she is "self-sufficient in gen-pop, do[es] not need infusions or surgery, am out-custody, and can be seen by pulmonary & cardiology there."  Ex. 16.  Defendant also asked to have the "medical hold from March 2023 removed."  *Id.*  This demonstrates that Defendant can be adequately treated at Carswell.

More importantly, nothing in Defendant's medical records suggests that she is not receiving adequate treatment at Carswell.  Defendant points to a physician's note on June 2, 2023 that states, ███████████████████████████████████████ Ex. 6 at 3.  The note continues that the appropriate treatment ████████████████████████ ██████████ and the same record indicates that Defendant was discharged two days later on June 4, 2023.  *Id.* at 6.  Defendant does not argue or point to any evidence that she was not adequately cared for during that hospital visit, or any other hospital visit.  As such, Defendant has made no showing of "long-term or specialized medical care that is not being provided."  USSG § 1B1.13(b)(1)(C).

Finally, Defendant also argues that even though Defendant "has been diagnosed with serious mental health disorders," "it does not appear that Ms. Riley has been given access to any comprehensive group or individual-based therapy or counseling."  Mot. at 8.  Defendant adds in reply that if the Government is correct that Defendant has factitious disorder or Munchausen syndrome, then it only shows that Defendant "suffers from an extremely serious disorder that the Bureau of Prisons (BOP) has failed to treat."  Reply at 1.  Defendant argues that "[t]he primary treatments for factitious disorder are psychotherapy and cognitive-behavioral therapy" and that there is no indication that "she has received psychotherapy, cognitive-behavioral therapy, or any other form of therapy for factitious disorder or for her other diagnosed mental health conditions."  Reply at 4.  According to Defendant, she "has met with a psychiatrist a few times" but "those

1    appointments appear to be for the limited purpose of medication adjustment." *Id.*  The

2    Government does not appear to address this argument head on.

3        While Defendant's complete medical records are not before the Court, the limited subset

4    provided by the parties indicates that BOP is monitoring and adequately treating Defendant's

5    mental health.  Ex. 5 (6/27/23 physician's note) ████████████████████████████████

6    ████████████████████; Ex. 7 (6/2/23 physician's note) ██████████████████████

7    ██████████████████████████████. Defendant's healthcare providers also

8    appear to be concerned that the medication sought by Defendant is causing or exacerbating mental

9    health issues, and have proposed treatment including psych consults and reducing potentially

10   harmful medication.  *See* Ex. 11 (4/18 physician's note) █████████████████████████

11   ███████████████████████████████████████████ Ex. 12 (same,

12   and ordering ████████████████████ Ex. 2 ███████████████████

13   ██████████████████████████████████████████████████

14   ████.   The records suggest Defendant's medical care providers are monitoring this issue, and

15   thus providing adequate medical care.  Perhaps psychotherapy and cognitive-behavioral therapy

16   would be useful to Defendant, but this Court is not a referring physician and has no reason to call

17   Defendant's medical care into question.  Defendant has made no showing that treatment without

18   psychotherapy or cognitive-behavioral therapy puts her "at risk of serious deterioration in health

19   or death" such that it would require a reduction in sentence.  USSG § 1B1.13(b)(1)(C).

20       Accordingly, the Court finds that Defendant has not satisfied either of the first two §

21   3582(c)(1)(A) factors.

22       **3.   3553(a) Factors**

23       "Third, the court must consider and weigh the factors set forth in 18 U.S.C. § 3553(a) to

24   decide whether the requested sentence reduction is warranted under the particular circumstances of

25   the case."  *Wright*, 46 F.4th at 945 (quotation marks and citation omitted).  Section 3553(a) lists

26   seven factors:

27               (1) the nature and circumstances of the offense and the history and
                     characteristics of the defendant;
28               (2) the need for the sentence imposed—

United States District Court
Northern District of California

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established . . .
>
> (5) any pertinent policy statement . . .
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Defendant addresses the first two factors. Defendant argues that any posed a danger to the community has been "enormously mitigated since sentencing" because "[h]er case has received widespread public attention" which "mitigate any concern that Ms. Riley would recidivate." Mot. at 10. Defendant also argues that the terms of her confinement require release because she "would normally be housed at a minimum-security camp" but is not only because "she suffers from chronic medical conditions." *Id.* at 11. Defendant again argues that "BOP cannot provide the adequate medical or mental health care[.]" Mot. at 12. Finally, Defendant argues that incarceration will not serve as adequate deterrence. *Id.*

The Government argues that the Court already addressed each of the factors at sentencing, especially Defendant's health and that "[i]f anything, the Section 3553(a) factors weigh more heavily towards incarceration now than they did at Defendant's sentencing." Opp. at 7.

At sentencing, the Court gave specific reasons for imposing its upward variance. Specifically, the Court stated, "I do find the public to be at significant risk from you. I do believe that this will happen again. [B]eing confronted with your lies seemed to be no deterrent whatsoever, and therefore I find the public to continue to be at risk from your continued fraud." Sentencing Tr. 34:14–18.

Since sentencing, little has changed in Defendant's circumstances. The Court is not persuaded that public attention of her crime suggests a decreased likelihood of recidivism. Furthermore, that Defendant's medical care keeps her from the lowest security section is not

grounds for early release. As the Government notes, Defendant chose Carswell. Opp. at 8; Sentencing Tr. 28:12–22. Furthermore, as discussed above, there is no evidence that Defendant is receiving inadequate medical care. The Government also argues that Defendant has only paid $800 of restitution, and that a $104,763.43 balance remains. But without more briefing on Defendant's ability to pay restitution while incarcerated, the Court treats this factor as neutral.

The most significant evidence from Defendant's time at Carswell is a documented history of malingering and interfering with her own medical treatment. Defendant intentionally stressed her body to create tachycardia (a heart rate over 100 beats per minute). Ex. 2 (attending note dated April 17, 2023) at US-2024-003070 ███████████████████████████████████████ ██████████████████████████████████████. Defendant was observed holding her breath during an oxygen saturation test to affect the test results. Ex. 3 ██████████████ ███████████████████████████████████. Defendant attempted to manipulate an infusion pump administering potassium to her. Ex. 3 (4/17/23 Nurse's note); Ex. 4 (4/22/23 Physician's note)███████████████████████████████████████████ ████████████████████████████. This evidence suggests an increased likelihood of recidivism.

Accordingly, the Court finds that Defendant has not satisfied the third § 3582(c)(1)(A) factor.

\*       \*       \*

A defendant must satisfy all three factors to qualify for compassionate release. Here, Defendant has satisfied none. Accordingly, the Court DENIES Defendant's motion for compassionate release.

**B.    Reduction in Sentence Under Section 3582(c)(2) and Amendment 821**

In the alternative, Defendant argues that the Court should reduce her sentence to 47 months (a 13-month reduction) pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 821 to the U.S. Sentencing Guidelines. Mot. at 12. The Government does not dispute that Defendant is eligible for reduction, but argues that relief is not appropriate because the Section 3553(a) factors militate against a reduction in Defendant's sentence. Opp. at 8.

1          Courts have adopted a two-step approach for determining whether a reduction is

2  appropriate under Section 3582(c)(2): First, the court must determine the defendant's eligibility

3  for a sentence modification, and the extent of the reduction authorized under U.S.S.G. § 1B1.10;

4  and second, the court must consider the appliable Section 3553(a) factors.  *See Dillon v. United*

5  *States*, 560 U.S. 817, 827 (2010); *see also United States v. Espinoza-Patino*, No. 12-cr-00833-

6  BLF, 2024 WL 1772862, at * 1-2 (N.D. Cal. April 22, 2024).

7          Defendant relies on Amendment 821 to the U.S. Sentencing Guidelines.  Amendment 821

8  to became effective on November 1, 2023 and Parts A and B may be applied retroactively.  *See*

9  U.S.S.G. § 1B1.10(a)(1), (d).

10          Part A of Amendment 821 struck the Sentencing Guidelines' former provision, which

11  added 2 status points if the defendant "committed the instant offense while under any criminal

12  justice sentence, including probation, parole, supervised release, imprisonment, work release, or

13  escape status."  U.S.S.G. § 4A1(d) (Nov. 1, 2015), as amended by Amendment 821. In its place,

14  Part A added a new provision under which 1 status point would be added if the defendant

15  otherwise received 7 or more criminal history points and "committed the instant offense while

16  under any criminal justice sentence, including probation, parole, supervised release, imprisonment,

17  work release, or escape status."  U.S.S.G. § 4A1.1(e) (Nov. 1, 2023).  Thus, Part A eliminates

18  status points for individuals with 6 or fewer criminal history points and replaces 2 status points

19  with 1 status point for individuals with 7 or greater criminal history points.

20          Part B of Amendment 821 added a provision to the Sentencing Guidelines that provides for

21  a 2-level reduction to a defendant's offense level for certain defendants that meet certain criteria,

22  including receiving no criminal history points. U.S.S.G. § 4C1.1(a) (Nov. 1, 2023).

23          According to the Sentencing Commission, the creation of § 4C1.1 "was informed by its

24  studies of recidivism among federal offenders, as well as other extensive data analyses of

25  offenders with no criminal history points, and public comment."  USSG App. C (amend. 821, Part

26  B, Subpart 1 – Zero-Point Offenders).  Based on this empirical analysis, the Commission

27  determined that "offenders with zero criminal history points have considerably lower recidivism

28  rates than other offenders, including offenders with one criminal history point."  *Id.*

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Defendant argues, and the Government and Probation do not dispute, that Defendant is

2  eligible for a retroactive reduction in her sentence because all the criteria set forth at Sections

3  4C1.1(a)(1) through (a)(10) are satisfied.  *See* ECF No. 66 ("SRIP") at Recommendation.  Upon

4  application of this provision to Defendant, her Total Offense Level is reduced to 11, resulting in a

5  guideline imprisonment range of 8 to 14 months.  *See id.* at 2.

6    However, while it is undisputed that Defendant is eligible for a reduction, the Court retains

7  great discretion in deciding whether to actually grant relief.  *United States v. Dunn*, 728 F.3d 1151,

8  1159-60 (9th Cir. 2013).  As discussed in the previous section, the 3553(a) factors militate

9  strongly against a reduction in sentence, even though Defendant is eligible.  Defendant has made

10  no showing that she is less likely to recidivate.  On the contrary, the overwhelming reports of

11  malingering and feigning illness from Defendant's medical care providers suggest an increased

12  likelihood of recidivism.  The crime of conviction carries a 20-year maximum sentence.

13  Considering the number of victims (over 300), the fraudulent financial benefit of over $100,000

14  received by Ms. Riley, and her continued efforts to fake her ailments, the Court is satisfied that 60

15  months of imprisonment is the fair and proper sentence at this time.

16    Thus, the Court DENIES Defendant's motion for a reduction in sentence under

17  Amendment 821.

18  **IV.    ORDER**

19    For the foregoing reasons, IT IS HEREBY ORDERED that:

20    1.  Defendant's motion for compassionate release is DENIED.

21    2.  Defendant's motion for a reduction in sentence under Amendment 821 is DENIED.

22

23  Dated: June 13, 2024

24  _____

25  BETH LABSON FREEMAN
    United States District Judge

26

27

28

                                    14